IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UTAH FIRST FEDERAL CREDIT UNION dba UTAH FIRST CREDIT UNION, a federal credit union,<br><br>     Plaintiff,<br><br>v.<br><br>UNIVERSITY FIRST FEDERAL CREDIT UNION dba UFIRST CREDIT UNION, a federal credit union,<br><br>     Defendant. | **MEMORANDUM DECISION AND ORDER SUSTAINING PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE'S ORDER AND GRANTING PLAINTIFF'S SHORT FORM DISCOVERY MOTION (LEE/REDKOR COMMUNICATIONS)**<br><br>Case No. 2:22-cv-00146-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff Utah First Credit Union's Objection to Memorandum Decision and Order of Magistrate Judge Regarding Plaintiff's Short Form Discovery Motion (Lee/RedKor Communications).[1]  On January 22, 2024, Chief Magistrate Judge Dustin B. Pead entered a Memorandum Decision and Order (Order) addressing two short form discovery Motions filed by Plaintiff.[2]  In the first Motion (Communications Motion), Plaintiff sought to compel Defendant UFirst Credit Union to produce certain documents and communications involving non-parties Rushford Lee and RedKor Brands (collectively, RedKor).[3]  In the second Motion (Trademark Search Motion), Plaintiff requested the court compel Defendant to produce factual information pertaining to the results of trademark searches conducted by Defendant

---

[1] Dkt. 156, *Plaintiff's Objection*.

[2] Dkt. 132, *Memorandum Decision and Order*.

[3] Dkt. 98, *Plaintiff Utah First Federal Credit Union's Short Form Discovery Motion Lee/RedKor Communications* (*Communications Motion*).

during its rebranding process.[4]  Defendant opposed the Motions, arguing the discovery Plaintiff

sought in both Motions was subject to attorney-client privilege.[5]  Judge Pead's Order appears to

have denied the Communications Motion and granted in part the Trademark Search Motion.

Plaintiff now objects to that denial and requests the court set it aside as contrary to law and grant

the Communications Motion.

For the reasons explained below, Plaintiff's Objection is SUSTAINED.  Judge Pead's

denial is set aside as contrary to law, and Plaintiff's Communications Motion is GRANTED.

## BACKGROUND

On October 5, 2023, Plaintiff filed the Communications Motion requesting the court

compel Defendant "to produce all allegedly privileged documents and communications involving

non-parties Rushford Lee and [RedKor] Brands as identified in [Defendant's] and [RedKor]

privilege logs."[6]  Defendant's privilege logs designated communications and documents

involving Defendant, Defendant's law firm, Kirton McConkie, and RedKor as protected by

attorney-client privilege.[7]  Plaintiff argued Defendant waived attorney-client privilege by

involving third party RedKor in the communications and neither the common-interest doctrine

nor Defendant's "functional equivalent of an employee" theory privileged the communications.[8]

Plaintiff filed the Trademark Search Motion on October 6, 2023, seeking the production of

---

[4] Dkt. 99, *Plaintiff Utah First Federal Credit Union's Short Form Discovery Motion Trademark Search Results* (*Trademark Search Motion*).

[5] Dkt. 104, *Defendant's Opposition to the Communications Motion* (*Communications Motion Opposition*); Dkt. 105, *Defendant's Opposition to the Trademark Search Results Motion* (*Trademark Motion Opposition*).

[6] *Communications Motion* at 2.  RedKor is an independent branding agency hired by Defendant as a "consultant" to assist Defendant in developing a new name and brand.  *Communications Motion Opposition* at 2.  Lee is a partner/owner and CEO of RedKor.  *Communications Motion* at 2; Dkt. 129, *Plaintiff Utah First Federal Credit Union's Reply in Support of Plaintiff's Supplemental Brief Regarding Plaintiff's Short Form Discovery Motion Lee/RedKor Communications* (*Plaintiff's Supplemental Reply*) at 4.

[7] *Communications Motion* at 2.

[8] *Id.* at 2–3.

factual information related to the results of trademark searches Defendant conducted during its rebranding process—which Defendant also identified as protected by attorney-client privilege.[9] Defendant opposed both Motions.[10]

On November 21, 2023, Judge Pead issued an order for supplemental briefing concerning the Communications Motion.[11]  He noted Defendant argued the requested discovery was privileged notwithstanding the involvement of RedKor for three reasons: (1) Defendant and RedKor were both clients of Kirton McConkie and the communications conveyed or discussed legal advice pertaining to Defendant's rebrand; (2) even if not a concurrent client of Kirton McConkie, the communications were privileged because RedKor was a de facto employee of Defendant; and (3) those arguments aside, Defendant and RedKor had a community of interest concerning the communications.[12]  Judge Pead concluded these three issues warranted further development and directed the parties to submit supplemental briefing.[13]  Additionally, he ordered Defendant to provide the subject documents for *in camera* review by the court.[14]  The parties did so[15] and, on January 22, 2024, Judge Pead entered an Order on the Motions.[16]

---

[9] *Trademark Search Motion* at 2.

[10] *Communications Motion Opposition*; *Trademark Motion Opposition*.

[11] Dkt. 126, *Order Regarding Plaintiff's Short Form Discovery Motion Lee/RedKor Communications*.

[12] *Id.* at 1.

[13] *Id.* at 2.

[14] *Id.*

[15] Dkt. 127, *Plaintiff's Supplemental Brief Regarding Plaintiff's Short Form Discovery Motion Lee/RedKor Communications* (*Plaintiff's Supplemental*); Dkt. 128, *Defendant's Response to Plaintiff's Supplemental Brief Regarding Plaintiff's Short Form Discovery Motion Lee/RedKor Communications* (*Defendant's Supplemental Response*); *Plaintiff's Supplemental Reply*.

[16] *Memorandum Decision and Order*.

The Order appears to resolve both the Communications Motion and the Trademark Search Motion.  It begins by briefly summarizing the discovery Plaintiff requests in each Motion and then explains:

> The court ordered additional briefing by the parties and *in camera* review.  The court has conducted its review and enters the following order that grants in part Plaintiff's motions.  The motions seek related information.  Therefore, the court enters this order and directs the parties that once this order is complied with, they meet to further discuss any communications that are at issue.  Following a meaningful meet and confer, the parties may seek further guidance from the court if necessary.[17]

The remainder of the Order—the entirety of the discussion and legal analysis—focused exclusively on the Trademark Search Motion.[18]  It did not discuss the Communications Motion or the parties' supplemental briefing concerning the Communications Motion in any way.  Judge Pead determined several documents at issue in the Trademark Search Motion involving communications between Kirton McConkie and RedKor contained legal advice and were at least partially privileged.[19]  Accordingly, he directed Defendant to produce certain complete or redacted versions of communications related to the trademark searches.[20]  However, he did not address Plaintiff's argument that none of the communications in dispute in the Motions were privileged because of the involvement of a third party, RedKor.  Nor did Judge Pead provide a basis for concluding the subject communications were privileged despite Defendant's apparent waiver.  The Order concluded "Plaintiff's motions are GRANTED IN PART AND DENIED IN PART as set forth above."[21]

---

[17] *Id.* at 1–2.

[18] *Id.* at 2–6.

[19] *Id.*

[20] *Id.* at 4–6.

[21] *Id.* at 6.

Due to the lack of discussion concerning the Communications Motion, the parties were unclear about the scope of the Order.[22]  In a meet and confer on January 26, 2024, they agreed Plaintiff's counsel would contact Judge Pead's chambers to clarify if the Order addressed both the Communications Motion and the Trademark Search Motion, or whether an additional order was forthcoming.[23]  Plaintiff's counsel did so on January 26 and in an email that same day, Judge Pead's law clerk responded that "Judge Pead intended for the order to cover both motions at this time."[24]

As ordered, Defendant began producing certain documents sought by the Trademark Search Motion.[25]  After reviewing the production, Plaintiff determined some of the discovery remained outstanding.[26]  The parties held a meet and confer to discuss the issue on February 2, 2024 and, on the same day, filed a stipulated motion to extend the time to file any objections to Judge Pead's Order until February 19, 2024.[27]  Judge Pead granted the stipulated request on February 5, 2024.[28]

The parties remained unable to resolve their differences concerning the Trademark Search issues raised in Judge Pead's Order.[29]  Plaintiff's counsel contacted Judge Pead's

---

[22] *Plaintiff's Objection* at 5.

[23] *Id.*

[24] Dkt. 156-7, *Exhibit G*.

[25] *Plaintiff's Objection* at 5.

[26] *Id.*

[27] Dkt. 138, *Stipulated Motion for Extension of Time to File Objection to Magistrate Judge Pead's 01/22/2024 Order*.

[28] Dkt. 141, *Order Granting Stipulated Motion for Extension of Time to File Objection to Magistrate Judge Pead's 01/22/2024 Order*.

[29] *Plaintiff's Objection* at 6.  Plaintiff continued to maintain its position that none of the information and documents it sought were protected by attorney-client privilege.  However, as Judge Pead's Order only provided direction concerning the Trademark Search Motion, the parties' efforts were focused on the documents at issue in that Motion.  *See id.* at 5 n.4.

chambers for instruction on how to seek additional guidance from the court on the matter,[30] as directed in the Order.[31]

On February 16, 2024, Judge Pead issued an Order Regarding Discovery Issues, directing Plaintiff "to file a new motion . . . concerning any additional discovery it seeks pertaining to the process and results of the trademark search," and set forth a briefing schedule for the motion.[32] This order further stated "the deadline to file any objections to [the Order] will be stayed pending resolution of any additional discovery issues related to the process and results of the trademark search."[33]

Plaintiff filed its Motion for Further Guidance Regarding Discovery Issues Related to the Process and Results of Defendant's Trademark Search on February 23, 2024.[34]  The Motion for Further Guidance primarily addressed the issues pertaining to the Trademark Search Motion. However, Plaintiff reiterated that, as argued in the Communications Motion, it continued to maintain "that RedKor, Rushford Lee, and any other pertinent employees of RedKor are third parties to the attorney-client relationship between [Defendant] and Kirton McConkie.  As such, any communications involving Rushford Lee and/or RedKor are not protected by the attorney-client privilege."[35]  The Motion for Further Guidance was fully briefed on March 14, 2024.[36]

---

[30] *Id.* at 6.

[31] *Memorandum Decision and Order* at 2 ("Following a meaningful meet and confer, the parties may seek further guidance from the court if necessary.").

[32] Dkt. 144, *Order Regarding Discovery Issues* at 1.

[33] *Id.* at 2.

[34] Dkt. 145, *Plaintiff's Motion for Further Guidance*.

[35] *Id.* at 5 n.2.

[36] Dkt. 146, *Defendant's Response to Motion for Further Guidance*; Dkt. 147, *Plaintiff's Reply in Support of Motion for Further Guidance*.

On May 22, 2024, Judge Pead held a hearing to discuss, among other things, the Motion for Further Guidance.[37]  The parties presented oral argument concerning the issues raised in the Motion for Further Guidance relating to the Trademark Search Motion.  Judge Pead did not address the Communications Motion, nor any of the legal issues raised in that Motion— including the threshold question of whether and why any of the communications Plaintiff sought were covered by attorney-client privilege.[38]  At the conclusion of the hearing, Judge Pead granted Plaintiff's Motion for Further Guidance and ordered Defendant to produce the outstanding information related to Defendant's trademark search results.[39]  In an order memorializing his oral ruling from the hearing, Judge Pead explained the information sought— pertaining only to the Trademark Search Motion—was factual in nature and not covered by attorney-client privilege.[40]  He concluded by noting "the court finds the production of this information does not impact or change its prior order regarding its *in camera* review," presumably referring to the denial of Plaintiff's Communications Motion.[41]

With discovery issues related to the Trademark Search Motion resolved, Judge Pead's stay on the deadline to file objections to the January Order resolving both Motions was lifted.[42]  Pursuant to Federal Rule of Civil Procedure 72(b)(3) and 28 U.S.C. § 636(b)(1)(A), Plaintiff timely filed the present Objection on June 7, 2024.[43]

---

[37] Dkt. 151, *Amended Notice of Hearing on Motion*; Dkt. 154, *Minute Entry*.

[38] *Plaintiff's Objection* at 7.

[39] Dkt. 152, *Order Granting Motion for Discovery*.

[40] *Id.* at 3.

[41] *Id.*

[42] Judge Pead did not formally lift the stay.  However, Plaintiff assumed Judge Pead's May 24, 2024 Order Granting Motion for Discovery indicated the stay was lifted and, pursuant to Federal Rule of Civil Procedure 72(a), its 14 days to file an objection to the January Order began to run.  The court agrees this assumption was reasonable and Plaintiff's Objection was timely.

[43] *Plaintiff's Objection*.

In the Objection, Plaintiff argues Judge Pead's denial of its Communications Motion in his January Order was "contrary to law" and Defendant's "[c]ommunications with a third party are not subject to protection under attorney-client privilege."[44]  Specifically, Plaintiff asserts Judge Pead erred by "not engaging in any legal analysis of the novel privilege issues raised by [Defendant] concerning the [Communications Motion]" and by "disregarding numerous examples of directly relevant case law showing that the [c]ommunications should not be protected by the attorney-client privilege."[45]  Plaintiff requests the court review de novo Judge Pead's Order concerning the Communications Motion, set aside as contrary to law the Order as it pertains to the disputed communications, and grant Plaintiff's Communications Motion.

## LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure requires the district court to "consider timely objection [to a nondispositive order from a magistrate judge] and modify or set aside any part of the order that is clearly erroneous or is contrary to law."[46]  The clearly erroneous standard applies to a magistrate judge's factual findings, which are reversed only if, after reviewing the evidence, "the court is left with the definite and firm conviction that a mistake has been committed."[47]  Under the contrary to law standard, the court reviews de novo "the [magistrate judge's] purely legal determinations"[48] and makes "an independent determination of the

---

[44] *Id.* at 2.

[45] *Id.*

[46] *Vivint, Inc. v. Alarm.com Inc.*, No. 2:15-cv-392, 2020 WL 4544316, at *6 (D. Utah Aug. 6, 2020) (quoting Fed. R. Civ. P. 72(a)); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

[47] *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) (quotation marks and citation omitted).

[48] *Combe v. Cinemark USA, Inc.*, No. 1:08-cv-142 TS, 2009 WL 3584883, at *1 (D. Utah Oct. 26, 2009) (citation omitted).

issues."[49]  "A magistrate judge's order is contrary to law if it 'fails to apply or misapplies relevant statutes, case law or rules of procedure.'"[50]  "The district judge is free to follow [a magistrate judge's order] or wholly ignore it, or, if he is not satisfied, he may conduct the review in whole or in part anew."[51]

Fundamentally, "these standards require the court to first determine whether the magistrate judge applied the correct legal standard and, assuming [he] did, then to determine whether the magistrate judge abused [his] discretion regarding the factual findings."[52]

## ANALYSIS

As explained below, the court concludes Judge Pead's Order denying Plaintiff's Communications Motion fails review at the first step because it does not articulate what legal standards were applied nor offer any analysis supporting the Order's conclusion.  Though the Order did not specifically discuss the Communications Motion, in denying it, the Order made the implicit legal determination the documents and information Plaintiff sought were protected by attorney-client privilege.  However, without any discussion or analysis, this determination "fails to apply or misapplies relevant statutes, case law or rules of procedure."[53]  Under its de novo review, the court determines Judge Pead's conclusion that the discovery at issue in Plaintiff's Communication Motion is protected by attorney-client privilege is contrary to law.  Accordingly,

---

[49] *Ocelot Oil Corp.*, 847 F.2d at 1464 (quoting *United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967)).

[50] *Hawkins v. Ghiz*, No. 2:18-cv-00466, 2021 WL 308238, at *1 (D. Utah Jan. 29, 2021) (quoting *Meacham v. Church*, No. 2:08-cv-535, 2010 WL 1576711, at *1 (D. Utah Apr. 19, 2010)).

[51] *Ocelot Oil Corp.*, 847 F.2d at 1464 (quoting *Mathews v. Weber*, 423 U.S. 261, 271 (1976)).

[52] *Mitchell Int'l, Inc. v. Healthlift Pharmacy Servs., LLC*, No. 2:19-cv-000637-RJS-DAO, 2020 WL 5645321, at *2 (D. Utah Sept. 22, 2020) (citation omitted).

[53] *Hawkins*, 2021 WL 308238, at *1.

Plaintiff's Objection is sustained, Judge Pead's Order as it relates to the Communications Motion

is set aside, and the Motion is granted.

## I.        The Communications Are Not Covered By Attorney-Client Privilege

In its Communications Motion, Plaintiff requests the court order Defendant to produce

certain documents and communications Defendant contends are protected by attorney-client

privilege.[54]  The discovery at issue comprises documents and communications involving

Defendant, Defendant's law firm, Kirton McConkie, and third party RedKor (including

RedKor's CEO Rushford Lee).[55]  Defendant asserts the communications are privileged and no

waiver has occurred.[56]  Specifically, notwithstanding the involvement of a third party, Defendant

contends the communications remain privileged under either the joint client doctrine, the

functional equivalent of an employee exception, or the community interest doctrine.[57]  The court

disagrees.

In federal-question cases such as this one, privileges are generally "governed by the

principles of the common law as they may be interpreted by the courts of the United States in the

light of reason and experience."[58]  The attorney-client privilege "is the oldest of the privileges for

confidential communications known to the common law."[59]  It "protects 'confidential

communications by a client to an attorney made in order to obtain legal assistance' from the

attorney in his capacity as a legal advisor."[60]  Notably, the "mere fact that an attorney was

---

[54] *Communications Motion* at 2.

[55] *Id.*

[56] *Communications Motion Opposition* at 2.

[57] *Defendant's Supplemental Response* at 2.

[58] *In re Qwest Commc'ns. Int'l Inc.*, 450 F.3d 1179, 1184 (10th Cir. 2006) (quoting Fed. R. Evid. 501).

[59] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted).

[60] *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983)).

involved in a communication does not automatically render the communication subject to the attorney-client privilege."[61]  "[R]ather, the 'communication between a lawyer and client must relate to legal advice or strategy sought by the client.'"[62]  Additionally, because the attorney-client privilege "contravene[s] the fundamental principle that the public . . . has a right to every man's evidence," it must be "strictly construed."[63]

In determining whether the privilege applies, the court considers, among other things, "whether the communication between the client and the attorney is made in confidence of the relationship and under circumstances from which it may be reasonably assumed that the communication will remain in confidence."[64]  "Because confidentiality is key to the privilege, '[t]he attorney-client privilege is lost if the client discloses the substance of an otherwise privileged communication to a third party.'"[65]  In other words, "[a]ny voluntary disclosure by the client is inconsistent with the attorney-client relationship and waives the privilege."[66]

In this case, Defendant is the relevant client and lawyers from Kirton McConkie are Defendant's attorneys.  RedKor is indisputably a third party to that relationship.  To the extent the purportedly privileged communications Plaintiff seeks are between Defendant and its attorneys for the purpose of Defendant obtaining legal advice, by disclosing them or otherwise involving third party RedKor in the communication, they are not confidential.  Defendant has thus waived the attorney-client privilege for the documents sought by Plaintiff's Motion unless one of the three exceptions Defendant invokes applies: the joint client doctrine, the functional

---

[61] *Id.* (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)).

[62] *Id.* (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998)).

[63] *Qwest*, 450 F.3d at 1185 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

[64] *Id.* (quoting *United States v. Lopez*, 777 F.2d 543, 552 (10th Cir. 1985)).

[65] *Id.* (quoting *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990)).

[66] *Id.* (quoting *United States v. Bernard*, 877 F.2d 1463, 1465 (10th Cir. 1989)).

equivalent of an employee exception, or the community interest doctrine.[67]  As the party

asserting attorney-client privilege, Defendant bears the burden of establishing it applies through

one of these exceptions.[68]  The court now discusses each exception in turn and explains why it

determines Defendant has failed to meet that burden.[69]

### A.  The Joint Client Doctrine

Notwithstanding the involvement of third party RedKor, Defendant asserts the subject

communications remain privileged under the joint client doctrine because both were clients of

Kirton McConkie and the communications pertain to Defendant's rebrand, on which RedKor

was "specifically retained by [Defendant] to consult."[70]  Defendant relies on several out-of-

circuit district court decisions in its discussion of the contours of the joint client doctrine.

First, citing *Maplewood Partners, L.P. v. Indian Harbor Ins. Co.*, a case construing

attorney-client privilege under Florida law, Defendant asserts the joint client doctrine

"recognizes that the attorney client privilege can apply to joint clients of the same attorney, in the

---

[67] In Defendant's Supplemental Response, it suggests for the first time a "significant purpose test" used by the D.C. Circuit also applies.  *Defendant's Supplemental Response* at 10.  As explained below, the court is not inclined to adopt an exception not recognized by the Tenth Circuit.  *Infra.* pp. 21–22.  Further, as Plaintiff notes, Defendant did not raise this argument in its initial Opposition to Plaintiff's Communications Motion and it was not one of the three specific issues Judge Pead requested supplemental briefing on.  Accordingly, Defendant has waived this argument and the court does not engage with it further.  *See, e.g., Deseret Tr. Co. v. Unique Inv. Corp.*, No. 2:17-cv-00569, 2018 WL 8110959, *4 (D. Utah July 3, 2018) (collecting cases declining to consider argument not first raised by defendant in its opposition brief).

[68] *Grand Jury Proceedings*, 616 F.3d at 1183 ("The burden of establishing the applicability of the attorney-client privilege rests on the party seeking to assert it.") (cleaned up).

[69] Defendant represents that any "[p]urely commercial or business correspondence between [Defendant] and RedKor, which did not concern [Kirton McConkie's] legal advice, have not been withheld as privileged and are not at issue" in Plaintiff's Communications Motion.  *Communications Motion Opposition* at 2.  Except as otherwise noted in this Order, the court assumes this to be true.  In other words, for purposes of this Order, the court assumes that, absent Defendant's waiver, the subject communications would otherwise be covered by attorney-client privilege.

[70] *Defendant's Supplemental Response* at 2; *Communications Motion Opposition* at 2 (citing *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) in support of joint client doctrine).

same litigation."[71]   Under these circumstances, "disclosure by a client or her attorney, which otherwise might constitute a waiver of the attorney-client privilege, is not considered a waiver if the disclosure is made to a co-client of that attorney."[72]   Defendant further explains that "while 'parties to a prior joint representation agreement are not entitled to assert attorney-client privilege offensively against each other . . . they are free to assert the privilege as to outsiders.'"[73]   Defendant and RedKor were both clients of Kirton McConkie and, Defendant contends, "were both seeking and obtaining legal advice for the identical matter, namely [Defendant's] rebrand due diligence, on which [Defendant] and RedKor were jointly working together and for which both [Defendant] and RedKor jointly received legal counsel."[74]   According to Defendant, "[t]his satisfies the joint or co-client doctrine sufficient to maintain the privilege."[75]

Defendant also discusses *Kirsch v. Brightstar Corp.*,[76] another case interpreting the joint client doctrine pursuant to Florida law.[77]   In *Kirsch*, as Defendant highlights, Brightstar, a party, and TDMobility, a nonparty, had common counsel.[78]   According to Defendant, because they were both involved in the litigation and communicated with their counsel concerning the underlying issues, the court concluded they "could share privileged documents relating to th[e]

---

[71] *Defendant's Supplemental Response* at 1–2 (quoting *MapleWood Partners, L.P. v. Indian Harbor Ins. Co.*, 295 F.R.D. 550, 594 (S.D. Fla. 2013)).

[72] *Id.* at 2 (quoting *MapleWood*, 295 F.R.D. at 594).

[73] *Id.* (quoting *MapleWood*, 295 F.R.D. at 596) (emphasis deleted).

[74] *Id.* at 3.

[75] *Id.*

[76] 68 F.Supp.3d 846 (N.D. Ill. 2014).

[77] *Defendant's Supplemental Response* at 2.

[78] *Id.*

litigation without waiving the attorney-client privilege."[79]  Defendant asserts this applies here

where "RedKor, though not a party, is involved in this litigation and has communicated with

[Kirton McConkie] alongside [Defendant] in connection with the underlying issues disputed

herein."[80]

Next, Defendant discusses the joint client doctrine as articulated by *Universal Standard

Inc. v. Target Corp.*, a decision from the Southern District of New York.[81]  Notwithstanding

Defendant's favorable citation to *Universal Standard* in its Opposition to Plaintiff's

Communications Motion,[82] in its Supplemental Response, Defendant contends the facts of the

case are "clearly distinct from the case at bar."[83]  *Universal Standard*, in which the court found

the joint client doctrine did not apply, involved a third party public relations agency hired to

assist with litigation publicity.[84]  Defendant argues this is "vastly different" than RedKor's role

as a consultant hired to assist Defendant with its rebrand.[85]  According to Defendant, the joint

client doctrine applies here because, unlike *Universal Standard*, Kirton McConkie's "legal

advice was essential to RedKor's ability to consult [Defendant] as to rebrand alternatives . . . and

to [Defendant's] ultimate determination to rebrand and select an appropriate brand premised, in

part, on that same legal advice."[86]

---

[79] *Id.* (quoting *Kirsch*, 68 F.Supp.3d at 855).

[80] *Id.*  Defendant grounds this assertion in the fact RedKor was subpoenaed to produce certain documents and Rushford Lee was deposed.  *Id.* n.14.

[81] *Id.* at 3–4.

[82] *See Communications Motion Opposition* at 2 (citing *Universal Standard* as "protecting confidential communications between client and attorney regarding legal advice," despite fact that the court there determined privilege was waived and joint client doctrine did not apply).

[83] *Id.*

[84] *Universal Standard Inc.*, 331 F.R.D. at 88.

[85] *Defendant's Supplemental Response* at 4.

[86] *Id.*

Plaintiff counters that Defendant's argument concerning the joint client doctrine "is problematic for several reasons."[87]  Plaintiff argues that *MapleWood* and *Kirsch* are inapt because they interpret attorney-client privilege pursuant to Florida law, "which does not apply to this case and is not closely analogous to the federal common law attorney-client privilege."[88] Plaintiff highlights Defendant fails to cite any controlling precedent adopting or applying the joint client doctrine pursuant to federal common law.[89]  Even if these cases applied, Plaintiff contends Defendant fails to demonstrate its entitlement to the exception under the plain language of those decision.  For example, under *MapleWood*, the joint client doctrine "requires something more" than Defendant and RedKor "happen[ing] to be clients of the same law firm."[90] Additionally, Plaintiff asserts Defendant's attempt to distinguish *Universal Standard* fails because Defendant "scrambles" the standards articulated in that case.[91]  "RedKor was not a necessary party to any communications between [Defendant] and [Kirton McConkie] that would have 'improved [Kirton McConkie's] understanding of [Defendant's] request for legal advice.'"[92]  According to Plaintiff, even under these out-of-circuit standards, the joint client doctrine does not prevent Defendant's waiver of attorney-client privilege.  The court agrees.

As an initial matter, Plaintiff is correct that Defendant does not cite any controlling Tenth Circuit precedent applying the joint client doctrine, nor can the court identify a Tenth Circuit decision expressly adopting it.  However, in *Qwest*, the Circuit appears to approvingly mention the doctrine in passing.  In declining to adopt another waiver exception, the Tenth Circuit noted

---

[87] *Plaintiff's Supplemental Reply* at 2.

[88] *Id.* (citing *MapleWood*, 295 F.R.D. at 583).

[89] *Id.* at 3.

[90] *Id.*

[91] *Id.* at 5.

[92] *Id.* at 5 (quoting *Universal Standard*, 331 F.R.D. at 88).

that "[w]hen disclosure is necessary to accomplish the consultation or assist with the representation, as in the case of an interpreter, translator, or secretary, an exception to waiver preserves the privilege."[93]  This is consistent with the articulation of the doctrine discussed below and, for these purposes, the court assumes the joint client doctrine is recognized by the Tenth Circuit.  Nevertheless, Defendant fails to establish it applies here.

Beginning with *MapleWood*, Plaintiff is correct to highlight the court in that case was applying the joint client doctrine under a Florida law governing attorney-client privilege.[94]  In a federal-question case such as this, attorney-client privilege is "governed by the principles of the common law as they may be interpreted by the courts of the United States."[95]  Defendant provides no argument or authority suggesting federal common law mirrors Florida law on this issue.[96]  That dubious foundation aside, Defendant's argument is no more compelling when considering the substantive components of *MapleWood*.

The portions of *MapleWood* Defendant cites demonstrate the joint client doctrine as construed under Florida law does not apply simply because a third party—a non-party to the litigation—happens to be represented by the same attorney as a party to the litigation.  The *MapleWood* court explained the joint client doctrine "simply recognizes that the attorney client privilege can apply to joint clients of the same attorney, in the same litigation."[97]  The court noted as an example that plaintiffs and intervenors in the case were co-clients of the same

---

[93] *Qwest*, 450 F.3d at 1195.

[94] *See MapleWood*, 295 F.R.D. at 583 (applying a Florida codification of attorney-client privilege because the case was brought under diversity jurisdiction so the court "look[s] to Florida law as to the attorney-client privilege").

[95] *Qwest*, 450 F.3d at 1184 (quoting Fed. R. Evid. 501).

[96] The court acknowledges *Universal Standard*—which Defendant at times draws upon for support and at other times seeks to distinguish—discusses an exception akin to the joint client doctrine under federal common law.

[97] *MapleWood*, 295 F.R.D. at 594.

counsel.  Due to that relationship and both parties' role in the case, "[t]here is no need to evaluate whether the legal interests of such co-clients are in common or aligned because the clients are joint clients of a single attorney and are entitled, jointly, to a continuing attorney-client privilege."[98]

Here, the relationship between Defendant, Kirton McConkie, and RedKor is distinct from that discussed in *MapleWood*.  The joint client doctrine—if it applies at all—applies to "joint clients of the same attorney, in the same litigation."[99]  The parties for whom the doctrine applied in *MapleWood*, plaintiffs and an intervening party, were both actual parties to the case.  Further, the communications at issue were shared at a time when the parties operated under a tacit joint representation agreement, as defined by an insurance policy governing the relationship between them.[100]  Defendant and RedKor may both separately be clients of Kirton McConkie, but they are not both parties in this case and Defendant presents no evidence they were subject to a joint representation agreement at the time the communications occurred.  The fact Defendant, RedKor, and Kirton McConkie previously communicated about matters that are now relevant to this litigation does not render them joint clients in this litigation.

Further, the *MapleWood* court's decision suggests the joint client doctrine under Florida law is a narrow exception that, in certain limited circumstances, permits a party to side-step the requirements of other privilege waiver exceptions (namely, the community interest doctrine

---

[98] *Id.*

[99] *Id*.

[100] *Id.* at 596 (citing *Brennan's Inc. v. Brennan's Rests., Inc.*, 590 F.2d 168, 172 (5th Cir. 1979) ("[P]arties to a joint representation agreement are not entitled to assert attorney-client privilege offensively against each other as to the matters included in that joint representation if the parties are in a subsequent dispute, but they are free to assert the privilege as to outsiders.")).

discussed below).[101]   Defendant urges the court to accept an interpretation of the doctrine that would provide an expansive carve-out to the "fundamental principle that the public . . . has a right to every man's evidence."[102]   The court declines that invitation.

The facts of *Kirsch* are similarly distinct and inapplicable.  In *Kirsch*, the court found disclosure of communications to a third party did not waive attorney-client privilege under the joint client doctrine.[103]   However, TDMobility, the non-party, was owned by Brightstar, the party in the case.[104]   TDMobility "had no in-house counsel, so Brightstar's legal department and outside counsel represented both Brightstar and TDMobility."[105]   TDMobility was "heavily involved" in the litigation and the court concluded, because of this involvement and the relationship between Brightstar and TDMobility, they could share documents without waiving attorney-client privilege.[106]

Here, RedKor is an independent branding firm hired by Defendant to consult on Defendant's rebrand.  There is no shared corporate relationship between the two entities. Moreover, RedKor is not heavily involved in the litigation.  It was subpoenaed to produce certain communications and its CEO was deposed.  This is not an abnormal request of third parties in possession of relevant discoverable information.  *Kirsch* does not establish the joint client doctrine shields the communications at issue in this case.

---

[101] *Id.* at 594 ("There is no need to evaluate whether the legal interests of such co-clients are in common or aligned because the clients are joint clients of a single attorney and are entitled, jointly, to a continuing attorney-client privilege.").

[102] *Qwest*, 450 F.3d at 1185 (citation omitted).

[103] *Kirsch*, 68 F.Supp.3d at 855.

[104] *Id.*

[105] *Id.*

[106] *Id.*

Further, Defendant's attempt to distinguish *Universal Standard* is unavailing.  That case demonstrates that, even outside the context of Florida law, Defendant has failed to establish the doctrine applies to preserve its assertion of attorney-client privilege.  In *Universal Standard*, the court explained disclosure of communications to a third party does not waive privilege "where the presence of a third party is needed to allow the client to communicate to an attorney, such as where a translator is used or where an accountant supplies specialized knowledge to allow an attorney to understand the client's situation."[107]  Importantly, "a communication between an attorney and a third party does not become shielded by the attorney-client privilege solely because the communication proves important to the attorney's ability to represent the client."[108] The court found Universal Standard waived attorney-client privilege and the joint client doctrine did not apply because the third party, a public relations agency hired by Universal Standard, was not necessary to allow Universal Standard to communicate with its attorneys.[109]  Any questions that arose concerning the press releases the third party was preparing "could simply have been communicated to the attorneys by Universal Standard" without the third party's involvement.[110] The same conclusion follows here.

RedKor is a branding agency hired by Defendant to consult on and assist with Defendant's rebrand.  Defendant's contention that RedKor's role is "vastly different than the public relations agency in *Universal Standard*"[111] because RedKor required Kirton McConkie's legal advice to properly consult on Defendant's rebrand, flips the test on its head.  The question

---

[107] *Universal Standard*, 331 F.R.D. at 87 (collecting cases within the Second Circuit).

[108] *Id.* (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)).  In *Ackert*, the Second Circuit held attorney-client privilege was waived because the third party, an investment banker, was not acting "as a translator or interpreter of client communications."  *Ackert*, 169 F.3d at 139.

[109] *Universal Standard*, 331 F.R.D. at 88.

[110] *Id.*

[111] *Defendant's Supplemental Response* at 4.

is not whether the third party required the legal advice of Defendant's counsel.  The question is whether the nature of the communication is so technical and specialized that Defendant's counsel required the third party to effectively serve as a translator in order to understand the client's situation.  Defendant presents no evidence that is the case here.  Defendant offers no compelling rationale to conclude communications concerning branding are so distinct from public relations that Defendant could not have communicated with its own attorneys without RedKor's involvement.

In sum, assuming the doctrine is recognized in the Tenth Circuit, the court determines Defendant has not demonstrated the joint client doctrine would apply in this case.  Defendant and RedKor may have independently engaged the same counsel, but they were not joint clients of the same attorney in the same case.  Moreover, Defendant has not established the communications at issue required RedKor's involvement in order for Defendant's counsel to properly serve Defendant.  The joint client doctrine does not excuse Defendant's waiver of attorney-client privilege by involving a third party in Defendant's communications with its attorney.

## B.  Functional Equivalent of an Employee Exception

Alternatively, Defendant argues it did not waive attorney-client privilege because RedKor "clearly qualifies as a de facto or functionally equivalent employee of [Defendant]."[112] The functional equivalent exception is an offshoot of the Supreme Court's decision in *Upjohn Co. v. United States*, where the Court held lower-level employees outside a company's "control group" may communicate with corporate counsel without waiving the company's attorney-client

---

[112] *Defendant's Supplemental Response* at 4.

privilege.[113]  Following the decision, some courts have extended its rationale to independent

contractors who, based on the circumstances, are determined to be the functional equivalent of an

employee.[114]  For example, in *In re Bieter Co.*, the Eighth Circuit held that, in certain situations

where an independent contractor or consultant "possesses[es] a significant relationship to the

client and the client's involvement in the transaction that is the subject of legal services," the

consultant's communication with the client's counsel would not waive attorney-client

privilege.[115]

As Plaintiff notes, the functional equivalent exception to the waiver of attorney-client

privilege is an exception not previously recognized by the Tenth Circuit, and the court cannot

identify a previous adoption of the exception in the District of Utah.  Moreover, despite

Defendant's contention that there is a "majority application" of this exception,[116] as the parties'

briefing illustrates, there is broad disparity in the standards and tests used by the courts applying

it.[117]

The court is skeptical the case law Defendant cites—absent any binding Tenth Circuit

precedent—supports recognition of the functional equivalent exception.  In declining to adopt a

different waiver exception to attorney-client privilege, the Tenth Circuit has cautioned "these

---

[113] *Upjohn*, 449 U.S. at 391 (holding attorney-client privilege may protect communications between lower-level employees and corporate counsel because these employees "can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties").

[114] *See e.g.*, *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994); *McCaugherty v. Sifferman*, 132 F.R.D. 234 (N.D. Cal. 1990); *Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co.*, 232 F.R.D. 103 (S.D.N.Y. 2005); *A.H. ex rel. Hadjih v. Evenflo Co.*, No. 10-cv-02435, 2012 WL 1957302 (D. Colo. May 31, 2012); *In re Restasis Antitrust Litig.*, 352 F.Supp.3d 207 (E.D.N.Y. 2019).

[115] *Bieter Co.*, 16 F.3d at 938 (internal quotation omitted) (cleaned up).

[116] *Defendant's Supplemental Response* at 7.

[117] *See id.* at 7–8; *Plaintiff's Supplemental Reply* at 7.

exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."[118]  The court is mindful that "[t]he attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."[119]  In view of that lengthy common law tradition and the Tenth Circuit's cautionary admonitions concerning the privilege, the Circuit's silence on this question gives the court pause about recognizing an exception not previously endorsed by binding authority.  That said, even assuming the functional equivalent exception is permitted, Defendant fails to establish it applies here.

Though the Tenth Circuit has not adopted the functional equivalent exception, the District of Colorado has adapted a three-factor test articulated by the Southern District of New York in *Asia Pulp* to determine if an outside consultant is functionally equivalent to an employee: "(1) whether the consultant had primary responsibility for a key corporate job, (2) whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation, and (3) whether the consultant is likely to possess information possessed by no one else at the company."[120]  The Southern District's standards are more rigorous than the tests devised in other courts, which Defendant urges the court to accept.  For these purposes, acknowledging the Tenth Circuit's guidance concerning the strict construction of attorney-client privilege, the court determines, were it to adopt the exception, this test is more appropriate than the more permissive standards Defendant advocates for.[121]

---

[118] *Qwest*, 450 F.3d at 1195.

[119] *Upjohn*, 449 U.S. at 389 (citation omitted).

[120] *Evenflo Co.*, 2012 WL 1957302, at *3 (quoting *Asia Pulp & Paper Co.*, 232 F.R.D. at 113).

[121] *See Defendant's Supplemental Response* at 5–7.

In *Asia Pulp*, the Southern District of New York found an independent financial advisor hired by a company to consult on the company's debt restructuring, who regularly communicated with the company's attorneys, was not functionally equivalent to an employee.[122]  The advisor "occupied a broad role that reflected a considerable degree of responsibility."[123]  The company's management did not have restructuring experience and the advisor was hired to "negotiate on behalf" of the company, to "help formulate the company's financial strategies," and "to articulate [the company's] positions to the creditor community."[124]  Despite that extensive involvement, contemplating the factors noted above, the court determined the advisor was not functionally equivalent to an employee because his "efforts are precisely those that any financial consultant would likely make under the circumstances."[125]  Additionally, even though the advisor spent "eighty to eighty-five percent of his time" on work for the company, he was still independent enough "to start and build a successful consulting business."[126]  The court determined these facts "contradict[ed] the picture of [the advisor] as so fully integrated into the [the company's] hierarchy as to be a de facto employee of [the company]."[127]

Defendant's facts are less compelling than those in *Asia Pulp* and fail to demonstrate RedKor was the functional equivalent of an employee.  RedKor did not have primary responsibility for a key corporate job.  As Defendant states, RedKor was retained to "assist [Defendant's] marketing team with rebranding due diligence" and otherwise consult on

---

[122] *Asia Pulp*, 232 F.R.D. at 112–14.

[123] *Id.* at 113.

[124] *Id.*

[125] *Id.*

[126] *Id.* at 114.

[127] *Id.*

Defendant's rebrand.[128]  Unlike *Asia Pulp*, where the company hired the advisor to perform a role it did not have its own personnel for, Defendant acknowledges it had employees responsible for managing the public-facing aspects of Defendant's business.  Defendant employs marketing personnel, but it hired RedKor to "assist" them in aspects of Defendant's rebrand—not to take primary responsibility for the endeavor.  Further, though it is not clear how much of RedKor's time was devoted exclusively to Defendant, RedKor is an independent branding agency providing its services to numerous other clients.[129]  As in *Asia Pulp*, these facts all suggest RedKor was not so "fully integrated" into Defendant's hierarchy as to be functionally equivalent to an employee.  Rather, RedKor's efforts were "precisely those that any [branding agency] would likely make under the circumstances."[130]

The court determines that, even if it were to adopt the functional equivalent exception, Defendant has not established RedKor satisfies the exception's standards.  RedKor was an independent outside consultant hired to assist Defendant's own employees on a discrete project pertaining to their responsibilities.  RedKor simply performed the function any branding consultant would be expected to perform and the functional equivalent exception does not apply.

## C.  The Community Interest Exception

Lastly, Defendant argues that, because it "shared an exactly identical legal interest" with RedKor, the community interest doctrine preserved attorney-client privilege with respect to the

---

[128] *Defendant's Supplemental Response* at 7.

[129] *See Plaintiff's Objection, Exhibit A* (RedKor's Website).

[130] *Asia Pulp*, 232 F.R.D. at 113.  Defendant also asserts RedKor qualifies as the functional equivalent of an employee because it "had relevant branding and consumer data" that Defendant did not possess.  *Defendant's Supplemental Response* at 7.  Although it is not clear from the parties' briefing, the court observes that if the discovery at issue involved communication concerning this branding and consumer data, Defendant's privilege argument is problematic for a more fundamental reason.  Attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney."  *Upjohn*, 449 U.S. at 395.  "[R]elevant branding and consumer data" are underlying facts that would not be covered by the privilege in the first instance.

subject communications.[131]  The community interest doctrine generally "operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party."[132]  "A community of interest exists where different persons or entities have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice . . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial."[133]  Defendant contends it shared a common, identical legal interest with RedKor because they "both sought to obtain legal advice from [Kirton McConkie] regarding trademark due diligence and branding issues."[134]  The court is not persuaded.

To the extent Defendant and RedKor had a common interest, Defendant fails to establish it was anything more than commercial.  Defendant and RedKor may have had a shared desire that Defendant would avoid future legal complications resulting from the rebrand Defendant retained RedKor to assist with, but this is not an identical legal interest—it is merely a function of their commercial relationship.[135]  Defendant possessed the final authority in selecting its new name and brand and it is now Defendant who faces potential legal liability for its alleged

---

[131] *Defendant's Supplemental Response* at 8–9.

[132] *Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998) (citing *NL Indus., Inc. v. Com. Union Ins. Co.*, 144 F.R.D. 225, 230–31 (D.N.J. 1992)); *see also Qwest*, 450 F.3d at 1195 ("[T]he 'joint defense' or 'common interest' doctrine provides an exception to waiver because disclosure advances the representation of the party and the attorney's preparation of the case.").

[133] *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-cv-890 TS, 2011 WL 2516935, at *3 (D. Utah June 23, 2011) (quoting *NL Indus., Inc.*, 144 F.R.D. at 230–31.  In *Frontier Refining*, 136 F.3d at 705, the Tenth Circuit also cited the same portion of *NL Indus.*

[134] *Defendant's Supplemental Response* at 9.

[135] *See, e.g.*, *Beltran v. InterExchange, Inc.*, No. 14-cv-03074-CMA-CBS, 2018 WL 839927, at *4 (D. Colo. Feb. 12, 2018) (citing *In re Urethane Antitrust Litig.*, MDL No. 1616, 2013 WL 4781035, *2 (D. Kan. Sept. 5, 2013) ("A common commercial interest and a common desire for the same outcome in a legal matter are not sufficient to establish a common interest.")).

infringement of Plaintiff's trademarks.  RedKor is not a party to this litigation and Defendant does not present any argument or evidence establishing RedKor has any legal exposure—directly or vicariously—for Defendant's alleged infringement.[136]  Accordingly, Defendant's waiver of attorney-client privilege concerning the subject communications is not shielded by the community interest exception.

In sum, RedKor is a third party to Defendant's attorney-client relationship with Kirton McConkie.  When Defendant involved RedKor in communications with Defendant's counsel, it waived any attorney-client privilege it may have otherwise been entitled to.  The exceptions Defendant raises do not apply in this case and do not excuse its wavier of attorney-client privilege concerning the communications at issue in Plaintiff's Communications Motion.

---

[136] *See id.* at *9 (finding no identical legal interest where defendant's legal interest was "to escape liability for the underpayment" alleged in the case and the third party "has no interest in escaping liability" because it could not be held liable for the underpayments); *Servicemaster of Salina, Inc. v. United States*, No. 11-1168-KHV-GLR, 2012 WL 1327812, at *3 (D. Kan. Apr. 17, 2012) (holding plaintiffs and third parties do not share a common interest where only plaintiffs "confront[ed]" the legal issue of tax deductibility for payments under a benefits plan administered and sold by the third parties because the shared desire that plaintiff's tax treatment theory was correct was a business or commercial interest, not legal).

## CONCLUSION

For the reasons explained above, Plaintiff's Objection[137] to Magistrate Judge Pead's Order is SUSTAINED.  Judge Pead's Order[138] denying Plaintiff's Communications Motion was contrary to law.  As it relates to the Communications Motion, the Order is set aside.  Plaintiff's Communications Motion[139] is GRANTED.  Defendant is ORDERED to produce within 14 days the communications identified in Plaintiff's Motion.

So ordered this 22nd day of July 2024.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[137] Dkt. 156.

[138] Dkt. 132.

[139] Dkt. 98.